OPINION
{¶ 1} This appeal arises out of the termination of a guardianship. On January 9, 2004, Diana and Jon Watkins applied to be appointed guardians of Brandon Hosey, who was born September 17, 2000. The Watkins stated a guardian was necessary because Brandon's mother was terminally ill and his father was incarcerated. They further stated that Brandon had lived with his mother, Jolanda Johnson, from birth until September 15, 2003, and with them since that time. The mother's consent to the guardianship was filed with the application and the father's consent was filed March 30, 2004. The probate court appointed the Watkins guardians of Brandon March 30.
 {¶ 2} On May 12, the mother wrote to the probate court, requesting termination of the guardianship. She represented that she had recently seen her neurosurgeon who had told her 95% of her brain tumor was gone and had cleared her to return to work. She also said that after reporting this to Diana Watkins and telling her she wanted to terminate the guardianship, Mrs. Watkins (the mother's cousin) denied her access to Brandon and told her that she and her husband wanted to adopt the child.
 {¶ 3} The probate court treated the mother's letter as a motion to terminate and set it for hearing June 11. The hearing was continued to June 29 at the request of the Watkins' counsel and, at counsel's request, the hearing was converted to a pretrial conference. In requesting that June 29 be used for a pretrial conference, counsel stated "that medical records of the biological mother and minor child must be obtained prior to a full hearing on this matter."
 {¶ 4} Following the pretrial conference, the termination hearing was scheduled for July 6. On June 29, 2004, counsel for the Watkins moved for continuance, citing the need for discovery, "including interrogatories, production of documents and possible depositions." Counsel's motion stated that the probate court — at pretrial — said discovery would not be permitted, and that counsel had a right to that discovery.
 {¶ 5} On July 1, the probate court filed a five-page entry denying the motion for continuance. After recounting much of the above history, the court stated:
 {¶ 6} "The Court conducted a telephone pre-trial conference with Mr. Johnson, Jolanda Johnson and Attorney Gregory Lind on June 29, 2004. At this conference, Jolanda Johnson indicated that she was prepared to bring to Court medical records from her doctors indicating that there was no brain tumor, that her health was good, and that she was being released to return to work. Ms. Johnson added that the co-guardians had refused to let her speak to the ward and/or see the child since May 12, 2004. Attorney Lind confirmed that the co-guardians had denied Ms. Johnson's efforts to communicate with her child; but, did not explain to the Court the reasons for this denial. It was represented to the Court that Jeremy Johnson and Jolanda Johnson were joining in a mutual request that this guardianship be terminated and that they have agreed to a shared parenting/visitation plan upon their return to West Virginia with the child. This Court set a full hearing on this Motion for July 6, 2004 at 10:30 A.M. and so advised the parties.
 {¶ 7} "Attorney Lind then requested this Court to continue this hearing for an additional 30 days suggesting that it was necessary for him to obtain additional medical records and records of Children's Services. Mr. Lind followed up this request with a written motion for continuance filed on June 29, 2004.
 {¶ 8} "He also filed a written request for production of documents requesting records from any psychiatrist or psychologist which Jolanda Johnson had seen in the past 5 years, any and all records from any health care provider which Ms. Johnson had seen in the past 5 years, any and all records concerning Ms. Johnson's diagnosis of cancer, any and all records of misdemeanor or felony charges filed against Ms. Johnson in the past 10 years, any and all records of any Children's Services or Family Services agency which may have investigated Ms. Johnson in the past 10 years, any and all records concerning medical treatment for the minor child, Brandon Hosey, and any immunization records for the ward.
 {¶ 9} "Mr. Lind failed to attach any memorandum in support of this motion; but orally made passing reference that there was more to this case than that which had been presented in the application for the guardianship.
 {¶ 10} "This Court notes that Jolanda Johnson made an oral request to the Court that this extended request for production of documents be denied.
 {¶ 11} "This Court is inclined to deny both motions of Attorney Lind for the following reasons. The sole reason and purpose for the establishment of this guardianship as presented to this Court was the terminal illness suffered by the child's mother and the incarceration of the child's father. The issue before this Court is whether or not the circumstances justifying the guardianship are still viable. The child's father had indicated to the Court that he is not incarcerated and is willing and able to support and care for this child. As well, the child's mother has indicated that she is prepared to present medical records indicating that she is currently healthy and, indeed, not terminally ill.
 {¶ 12} "Without affording the Court any supporting evidence or documentation, Attorney Lind now asks this Court to order the natural mother to secure, pay for and present to this Court a significant number of documents which may or may not yield information on issues not related to the current health of the mother. The co-guardians, by way of counsel's discovery request, are seeking to expand the nature of this hearing from one concerning the viability of a voluntary guardianship to a fully contested custody hearing. In doing so, they have neither filed a written complaint nor afforded any other notice to the natural parents of their intent to so maintain custody of the ward. Instead, they seek to change the purpose of this hearing from that addressing the current health of the mother to one addressing her `fitness' to care for her child.
 {¶ 13} "The Court believes that to permit this would be inherently unfair to the natural mother. Had the guardianship been established for the reason that the mother was unfit to care for the ward, then that issue would remain before the Court. But the parties chose to limit the basis of the guardianship to the issue of the health of the natural mother and the incarceration of the natural father, and the Court will limit its current consideration of the guardianship to those issues.
 {¶ 14} "Attorney Lind argues orally that the `best interests' of the child warrant an expanded hearing. This Court disagrees. While the Court will consider the best interests of the child, it will do so only in the context of the issues properly before the Court.
 {¶ 15} "Additionally, the Court notes that Ms. Johnson is not an attorney and is not represented by an attorney. This Court believes that Attorney Lind's discovery request would place an `undue burden and expense' upon Ms. Johnson. There also appears to be issues of confidentiality which would be compromised should this Court grant such a motion to produce documents. Again, this Court emphasizes that this guardianship was established for a singular purpose and with the written consent of Jolanda Johnson. Ms. Johnson is prepared to establish to this Court that this purpose is no longer applicable and that she wishes to withdraw her consent. This Court does not find it just to require Ms. Johnson to jump through any additional legal hurdles to re-gain the custody of her child in this guardianship case.
 {¶ 16} "Finally, this Court considers that Ms. Johnson filed her motion to terminate the guardianship on May 12, 2004. At the request of the co-guardians, this matter has been set for hearing nearly 2 months after said request was made to the Court. It is inherently unfair to the natural parents that this matter be continued any further.
 {¶ 17} "Accordingly, the written motions of the co-guardians for a continuance of the July 6, 2004 hearing and the request for production of documents are denied."
 {¶ 18} On July 1, the Watkins filed a notice of appeal of the probate court's "decision dated June 30, 2004," which we conclude can only be a reference to the probate court's above-quoted entry of July 1. On July 2, the Watkins moved to continue the July 6 hearing, stating their appeal divested the probate court of jurisdiction to hear the case. The probate court denied the motion, concluding, in effect, that the order appealed from was not presently appealable and that the notice of appeal did not oust its jurisdiction.
 {¶ 19} After an evidentiary hearing on July 6, the trial court terminated the guardianship. No appeal was taken from the order terminating the guardianship, nor was the July 1 notice of appeal amended to include the order terminating the guardianship.
 {¶ 20} The Watkins assign error as follows:
 {¶ 21} "1. The trial court abused its discretion to the prejudice of the appellants by interjecting itself in the conduct of the trial by prohibiting the appellants [SIC] request for discovery."
 {¶ 22} The child's parents were not represented by counsel before the probate court, and have not appeared in this court.
 {¶ 23} The thrust of the Watkins' appeal is that the probate court abused its discretion by, in effect, acting as the parents' advocate in denying them discovery based on the expense to the parents and confidentiality concerns. The Watkins recognize that there is a threshold issue of whether these issues are properly before this court, as the denial of discovery was an interlocutory order, and only appealable if that order satisfies some criterion found in R.C. 2505.02.
 {¶ 24} The Watkins appear to have settled upon R.C.2505.02(B)(2) as the criterion which the order denying discovery satisfies: (a)n order that affects a substantial right made in a special proceeding. . . .
 {¶ 25} Case law supports the Watkins' claim that R.C. Chapter 2111 guardianships are special proceedings. In re Guardianshipof Therron Freeman, a Minor (Nov. 20, 2003), Adams App. No. 02CA737. The question, then, is whether the probate court's refusal to allow discovery affected a substantial right.
 {¶ 26} The Watkins have furnished us with no authority supporting their contention that the probate court's order denying discovery affected a substantial right, as defined at R.C. 2505.02(A)(1). They cite In re Guardianship of Johnson
(1987), 35 Ohio App.3d 41, wherein the Court of Appeals for Franklin County held, in an analysis under Amato v. GeneralMotors Corp. (1981), 67 Ohio St.2d 253, that an ordercompelling a psychiatric examination was immediately appealable.
 {¶ 27} Amato was overruled by Polikoff v. Adam (1993),67 Ohio St.3d 100, but the court expressly declined to discuss whether the order in question "affected a substantial right." Notwithstanding the revision of R.C. 2505.02 in 1998, in the wake of Polikoff, and the defining of "substantial right" at R.C.2505.02(A)(1), the Amato balancing test retains its vitality in determining whether an order affects a substantial right. InHarness v. Harness (2001), 143 Ohio App.3d 669, the Court of Appeals for Ross County, expressly referring to R.C.2505.02(B)(2), quoted Bell v. Mt. Sinai Med. Ctr. (1993),67 Ohio St.3d 60, 63, as follows:
 {¶ 28} "An order which affects a substantial right has been perceived to be one which, if not immediately appealable, would foreclose appropriate relief in the future."
 {¶ 29} Interestingly, Bell was decided the same day asPolikoff. (Bell was a 6-1 opinion, Polikoff was unanimous, and the author of each opinion concurred in the opinion of the other).
 {¶ 30} Based on the foregoing discussion, we conclude that the order denying discovery was not a final order under R.C.2505.02(B)(2) because it didn't foreclose appropriate relief in the future. Bell, Harness. Put differently, appellate relief was available upon appeal from the order terminating the guardianship, had an appeal from that order been taken, which did not occur.
 {¶ 31} Were we to consider the Watkins' request for discovery a provisional remedy to the extent it sought possibly privileged information — R.C. 2505.02(A)(3) — the order would still not qualify as a final order because the Watkins could not satisfy R.C. 2505.02(B)(4)(b) because they could have been afforded a "meaningful . . . effective remedy," i.e., reversal of the termination order (if warranted) by an appeal from the order of termination.
 {¶ 32} Accordingly, this appeal will be dismissed.
 {¶ 33} There being no appeal from the guardianship, that issue is not before us. Had we the jurisdiction to consider that issue, we would affirm. We do not have a transcript of the July 6 evidentiary hearing that resulted in the termination of the guardianship, nor an "agreed statement of the record pursuant to App.R. 9(D)," which the Watkins' civil docket statement said would be filed. Accordingly, there is nothing before us to rebut the presumption that the probate court had an adequate basis for terminating the guardianship.
Fain, J. and Young, J., concur.